**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

THOMAS GRANT,

    Plaintiff,

    v.                                                        Civil Action No.:  JRR-23-3306

DR. JOEL BUZY and
YESCARE MEDICAL,

    Defendants.

**MEMORANDUM OPINION**

Self-represented Plaintiff Thomas Grant, an inmate incarcerated at Roxbury Correctional

Institution ("RCI") in Hagerstown, Maryland, filed the above-captioned civil rights action pursuant

to 42 U.S.C. § 1983 against Dr. Joel Buzy, Regional Medical Director, and YesCare Medical

("YesCare").  ECF No. 5.  Mr. Grant alleges in his Amended Complaint that Defendants failed to

provide medical care for his vision issues.  Mr. Grant seeks injunctive relief and monetary

damages.

On June 7, 2024, Defendants filed a Motion to Dismiss, or in the Alternative, for Summary

Judgment.  ECF No. 15.  Mr. Grant opposes the Motion (ECF No. 17) and Defendants have replied

(ECF No. 18).  Having reviewed the submitted materials, the court finds that no hearing is

necessary.  Local Rule 105.6 (D. Md. 2023).  For the reasons set forth below, Defendants' Motion

will be granted.

**BACKGROUND**

**A.  Plaintiff's Amended Complaint**

Mr. Grant states that he was experiencing serious pain and vision issues in both of his eyes

over the course of six months in 2023.  ECF No. 5 at 4.  He alleges that on August 18, 2023, due

to the progression of his vision issues, he was sent to the University of Maryland Medical Center ("UMMC") and examined by Dr. Samuel David Friedel who recommended surgical treatment. *Id.* According to Mr. Grant, Dr. Joel Buzy denied the recommended surgical procedure without proposing an alternative treatment plan and let the damage to his eyes progress. *Id.* at 5, 6. Mr. Grant contends that Dr. Buzy intentionally denied him the treatment he required. *Id.* at 7.

Mr. Grant asserts that his vision loss continues to progress, and the pain is causing daily migraine headaches. ECF No. 5 at 5. He requests that the court order that he receive the recommended surgery and award him monetary damages. *Id.*

### B.  Defendants' Dispositive Motion and Plaintiff's Response in Opposition

Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment together with a Memorandum and exhibits. ECF Nos. 15, 15-1 through 15-10. Defendants argue that (1) Mr. Grant fails to state a claim against YesCare; and (2) Mr. Grant fails to state a claim for deliberate indifference against Dr. Buzy, or, alternatively, Dr. Buzy is entitled to summary judgment in his favor. Mr. Grant filed a response in opposition including several exhibits. ECF No. 17.

### STANDARDS OF REVIEW

### A.  Motion to Dismiss

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Fed. R. Civ. P. 12(d). *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6),

however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *Adams Hous., LLC v. City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (*per curiam*).  As is the case here, when a movant titles its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so.  *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 222 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5 C Wright & Miller, FEDERAL PRACTICE & PROC. § 1366, at 159 (3d ed. 2004, 2011 Supp.).  This

3

discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id*. at 165, 167.

### B.  Discovery

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x 632, 638–39 (4th Cir. 2016) (*per curiam*); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014).  However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Fed. R. Civ. P. 56(d) (formerly Fed. R. Civ. P. 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see also Harrods Ltd.*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs. LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted).  A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine

4

issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trustees, Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods Ltd.*, 302 F.3d at 244 (citations omitted). Despite the absence of the non-moving party's Rule 56(d) affidavit, the court shall not issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit places "'great weight'" on the Rule 56(d) affidavit, and holds that mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).

Failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods Ltd.*, 302 F.3d at 244–45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638. Mr. Grant has not requested discovery, therefore the pending motion will be construed as one seeking summary judgment.

### C.  Summary Judgment

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002); *see F.D.I.C. v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  Moreover, the trial court may not make credibility determinations on summary judgment.  *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015); *In re French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644–45.  Therefore, in the face of conflicting evidence, such as competing affidavits,

summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247–48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because Mr. Grant is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That notwithstanding, the court must also abide the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### C. Dr. Buzy Declaration and Medical Records – Facts Not in Dispute

Th following facts are undisputed:

On January 3, 2023, Mr. Grant saw Dr. Maksed Choudry for a chronic care visit. ECF No. 15-5 at 12-17.[1] He had several documented medical issues: hypertension, Type-2 diabetes, a history of Hepatitis C, allergic rhinitis, glaucoma, cataracts, hyperlipidemia, headache, fingernail

---

[1] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case File (CM/ECF) system.

dermatophytosis, low Vitamin B12, and chronic hip pain.  *Id.*  At that time, Mr. Grant was using two eye drops and was "being followed by Ophthalmology/Optometry."  *Id.* at 12.

Mr. Grant had a chronic care telehealth appointment on March 29, 2023, with Dr. Oluyemi Abiodun.  ECF No. 15-5 at 1-11.  As to Mr. Grant's vision issues, Dr. Abiodun noted that he had been seen by ophthalmology on February 8, 2023, but the study conducted was poor quality and Mr. Grant was scheduled to return in 3 to 4 months.  *Id.* at 2.  Mr. Grant did not have a history of diabetic retinopathy; he reported a history of glaucoma and vision problems since 2010, specifically that his vision worsened after an episode of blepharoconjunctivitis.[2]  *Id.* at 1, 2.  His condition was managed with timolol and latanoprost eye drops.  *Id.* at 2.  Dr. Abiodun submitted a consultation request for Mr. Grant to see an ophthalmologist, which was approved.  ECF No. 15-4 at 37-39; ECF No. 15-5 at 20-26.  However, there was no availability until July 19, 2023.  ECF No. 15-5 at 20.

In the meantime, optometrist Dr. Reid Gardner saw Mr. Grant on May 6, 2023.  ECF No. 15-10 at 24.  The Eye Examination Form, as explained in Dr. Buzy's declaration, states that Mr. Grant was diagnosed with a compound hyperopic astigmatism in both eyes, farsightedness, glare, glaucoma, and cataracts.  *Id.* at 24; ECF No. 15-2 at ¶ 10.  Dr. Gardner gave him a prescription for glasses with gray tint and submitted a consultation request for ophthalmology within three months and optometry in 6 months.  ECF No. 15-10 at 22-24.  Mr. Grant received his glasses on May 26, 2023.  *Id.* at 19.

Mr. Grant saw ophthalmologist Dr. Samuel Friedel at the UMMC Friedenwald Eye Institute on July 19, 2023.  ECF No. 15-10 at 18.  Mr. Grant reported that his vision problems included severe glare and that he was unable to make out faces.  *Id.*  Dr. Friedel encouraged Mr.

---

[2] Blepharoconjunctivitis is a chronic eye condition that causes inflammation of the eyelids and conjunctiva.  ECF No. 15-2 at ¶ 8.

Grant to be compliant with his latanoprost and timolol prescriptions and also prescribed dorzolamide eyedrops for both eyes. *Id.* Dr. Friedel noted that Mr. Grant had cataracts in both eyes, which severely limited his vision, especially in his left eye. *Id.* Dr. Friedel planned for cataract extraction and intraocular lenses in the right eye[3] and a follow up in three weeks for various tests and measurements. *Id.*; ECF No. 15-2 at ¶ 11. PA Crystal Jamison submitted a consultation for an ophthalmology follow up in three weeks; Mr. Grant was scheduled for August 18, 2023. ECF No. 15-4 at 25, 29; ECF No. 15-5 at 27.

At that appointment, Dr. Friedel diagnosed Mr. Grant with primary open angle glaucoma in both eyes. ECF No. 15-10 at 11. Dr. Friedel instructed Mr. Grant to continue with the latanoprost and timolol eye drops. *Id.* Dr. Friedel concluded that the left cataract was so severe as to interfere with Mr. Grant's quality of life and recommended surgery to Mr. Grant, who agreed. *Id.* at 14. Dr. Friedel requested to schedule the surgery within 2-4 weeks. *Id.* PA Jamison submitted the request on August 20, 2023. ECF No. 15-4 at 20. Utilization Management ("UM")[4] returned an alternative treatment plan ("ATP") stating that medical necessity had not been demonstrated and recommended surgery when visual acuity in both eyes was worse than 20/60; at the time of the request Mr. Grant's right eye was 20/40. ECF No. 15-5 at 35. UM recommended glasses instead. *Id.*

During a provider visit on August 31, 2024, Mr. Grant reported to NP Bintou Kaba-Henderson that he was experiencing significant glare, difficulty reading, and poor depth perception. ECF No. 15-4 at 14. She noted that Mr. Grant's right eye had a visual acuity of 20/40

---

[3] Dr. Buzy notes that this may be a typographical error since Dr. Friedel noted that the cataracts were worse in Mr. Grant's left eye. ECF No. 15-2 at ¶ 11.

[4] Dr. Buzy attests that he is not a member of UM and is not involved in reviewing consultation requests. ECF No. 15-2 at ¶ 5.

while his left was significantly compromised at 20/300. *Id.* NP Kaba-Henderson submitted another consultation request for the cataract surgery. *Id.* at 5-9. UM returned another ATP, denying because the visual acuity in Mr. Grant's right eye was not worse than 20/60. *Id.* at 12.

On November 20, 2023, a Pain Panel was held between Mr. Grant, Dr. Buzy and others regarding Mr. Grant's bilateral hip pain. ECF No. 15-4 at 4. Mr. Grant requested an increase in dosage, but had "maxed out on amitriptyline" and so the Pain Panel discontinued an alternative medication and prescribed him Cymbalta and physical therapy. *Id.* Dr. Buzy attests that Mr. Grant was very angry after the Panel and accused him of denying Mr. Grant cataract surgery. ECF No. 15-2 at ¶ 16. However, Dr. Buzy was hearing about his cataract issue for the first time; he contacted Dr. Kyle Smith, the onsite provider, who told Dr. Buzy that he planned to submit another request for the cataract surgery based on updated visual acuity tests. *Id.*

Mr. Grant competed an eye exam with RN Ines Meitsa on November 28, 2023. ECF No. 15-3 at 38; ECF No. 15-4 at 1. Mr. Grant reported that he could not see out of his left eye and was only able to read the chart with his right eye while wearing glasses, a visual acuity of 20/50. *Id.* Dr. Smith submitted a request for cataract surgery for Mr. Grant's left eye the following day. ECF No. 15-3 at 33-37. He noted that Mr. Grant's right eye acuity had worsened to 20/50 and his left eye acuity was 20/400. *Id.* at 34. UM returned another ATP based on the recommendation that surgery only be done when both eyes have an acuity worse than 20/60. ECF No. 15-6 at 24. UM suggested continued observation. *Id.* Dr. Buzy attests that after learning of the ATP, he discussed Mr. Grant's condition with the Statewide UMMD, Dr. Smith, and the UM Nursing Staff and they decided to approve the surgery on December 21, 2023. *Id.*; ECF No. 15-2 at ¶ 18. Mr. Grant was scheduled for surgery on February 29, 2024. ECF No. 15-6 at 24.

Mr. Grant had a pre-op cataract evaluation with Dr. Friedel on January 19, 2024. *See* ECF No. 15-9 at 34-39; ECF No. 15-10 at 1-8. He continued Mr. Grant's prescriptions for latanoprost and timolol. ECF No. 15-9 at 34. Dr. Friedel further noted that Mr. Grant's vision had worsened substantially since August 2023, and that his visual acuity remained 20/400 for the left eye and 20/60 for the right eye. *Id.*

PA Jamison saw Mr. Grant on February 28, 2024, to clear Mr. Grant for his surgery. ECF No. 15-3 at 11-18. Dr. Friedel performed a complex cataract extraction with insertion of intraocular lens implant on Mr. Grant's left eye the following day, February 29, 2024. ECF No. 15-9 at 3-4. Mr. Grant saw Dr. Friedel for a follow up on March 1, 2024. ECF No. 15-8 at 29-31. Mr. Grant reported pain and headache; his intraocular pressure was moderately elevated but there was no sign of infection. *Id.* at 30. Dr. Friedel instructed Mr. Grant to continue wearing an eye shield at night and to avoid strenuous activity for one week. *Id.* Additionally, he provided him with an array of post-operative eye drops. *Id.* Mr. Grant returned to RCI that evening and saw RN Roseline Onyia, who confirmed that he was stable and had all of his eye drops before discharging him back to his housing unit. ECF No. 15-3 at 8-10.

Mr. Grant was approved for one-week and one-month post-op appointments with ophthalmology. ECF No. 15-7 at 36; ECF No. 15-8 at 11. He saw Dr. Friedel on March 8, 2024; his vision had improved significantly, and Mr. Grant reported that he was following the drop regimen. *See* ECF No. 15-8 at 25-28. Dr. Friedel adjusted his drop prescriptions and discontinued use of the eye shield. *Id.* at 26. Mr. Grant returned on March 29, 2024. ECF No. 15-10 at 31. He received a new glasses prescription and Dr. Friedel recommended cataract surgery for his right eye. *Id.* Mr. Grant continues to be monitored by optometry and ophthalmology for his vision issues. *See id.* at 25-30.

**DISCUSSION**

**A.  Mootness**

Article III of the Constitution limits the judicial power to "actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted).  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III – when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (internal quotation marks omitted).  Where injunctive or declaratory relief is requested in an inmate's complaint, it is possible for events occurring subsequent to the filing of the complaint to render the matter moot.  *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *see also Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief).

In his Amended Complaint, Mr. Grant requests that this court issue an order for him to receive the cataract surgery recommended by Dr. Friedel for his left eye.  ECF No. 5 at 5.  As recited above, there is no dispute of fact that Mr. Grant received cataract surgery on his left eye on February 29, 2024.  As such, Mr. Grant's demand for surgery and related request for injunctive relief shall be denied as moot.

**B.  Failure to State a Claim**

Defendants assert that Mr. Grant has failed to state a claim against Defendant YesCare because the Amended Complaint contains no allegations against the company.  ECF No. 15-1 at 13.  Liability under § 1983 attaches only upon personal participation by a defendant in the

12

constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Other than being named in the caption of the Amended Complaint, YesCare is not mentioned anywhere in the factual allegations.[5] Therefore, Mr. Grant fails to state a claim against YesCare, and the motion will be granted as to YesCare per Rule 12(b)(6).

### C. Eighth Amendment

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff suffered from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *see also Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839, 840; *see also Anderson*, 877 F.3d at 544. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'"

---

[5] Mr. Grant acknowledges as much in his opposition. ECF No. 17 at 7.

*Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable."). Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)) *see also Jackson*, 775 F.3d at 179 (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk).

Dr. Buzy does not dispute that the cataract in Mr. Grant's left eye was an objectively serious medical need, as it had been diagnosed by Dr. Friedel as requiring treatment. ECF No. 15-1 at 14.

14

Instead, Dr. Buzy asserts that he was not deliberately indifferent to that need, and he is therefore entitled to summary judgment in his favor.  The court agrees.

Mr. Grant fails to generate a dispute of fact or otherwise produce admissible evidence on which a reasonable fact finder could conclude that Dr. Buzy denied surgical requests or otherwise acted recklessly in response to Mr. Grant's cataracts.  As to the surgical requests, there is no dispute that Dr. Buzy is not part of the UM team responsible for reviewing such requests.  Mr. Grant fails to generate a triable question that Dr. Buzy, rather than UM, denied the initial surgical requests. Quite to the contrary, the undisputed facts are that despite the denials and ATPs, Dr. Buzy consulted with Dr. Smith and appealed the denial, which ultimately resulted in surgery approval.

In his opposition, Mr. Grant argues that Dr. Buzy was aware of his vision problems as early as August 2023 and that it was unconscionable to remove the cataract only in his left eye.  ECF No. 17 at 2 -3.  Mr. Grant concedes he did not see Dr. Buzy in person until the November 2023 Pain Panel, but attaches several prescription labels on which Dr. Buzy's name is printed.  ECF No. 17 at 2; ECF No. 17-1.  Mr. Grant fails to explain how, if at all, any of the prescriptions relate to or bear upon matters before the court; and the court observes no connection.  Further, while Dr. Buzy may have been aware of Mr. Grant's other medical issues, Mr. Grant does not offer anything to rebut Dr. Buzy's attestation that he was not aware of Mr. Grant's vision issues until the Pain Panel and that he was not Mr. Grant's primary provider.  Mr. Grant fails to generate a triable question on this issue.

Mr. Grant also complains that he should have received surgery for cataracts in both eyes; he attaches Dr. Friedel's report from an August 2023 appointment in which he noted a "plan for cataract extraction left eye first . . . ."  From this, Mr. Grant appears to infer (reasonably) that both eyes required surgery.  ECF No. 17-2; ECF No. 17 at 3.  But nothing in the record before the court

suggests that Mr. Grant's surgeon planned or intended that surgery would be conducted on both eyes in the same surgical procedure (as opposed to two surgical procedures – beginning with the left eye). Mr. Grant's preference to have both extracted at the same time amounts to no more than a disagreement with Dr. Friedel's treatment plan; and, in any event, Plaintiff fails to generate a triable issue on this point.

"Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)); *accord Jackson*, 775 F.3d at 178 ("[W]e consistently have found such disagreements to fall short of showing deliberate indifference."). Exceptional circumstances have not been presented, and the court discerns none. Finally, as a matter of law and logic, Mr. Grant's disagreement with one doctor's treatment plan does not bear upon the question whether Dr. Buzy was reckless in his treatment of Mr. Grant. Viewed in the light most favorable to Mr. Grant as the non-movant, the undisputed facts are that Dr. Buzy advocated for Mr. Grant so that he did not have to wait until the cataract condition in his right eye worsened to be approved for surgery. As such, Dr. Buzy is entitled to summary judgment in his favor.[6]

## CONCLUSION

For the foregoing reasons, Mr. Grant's claim for injunctive relief is moot and Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment is granted as to Mr. Grant's Eighth

---

[6] Mr. Grant avers in his opposition that Dr. Buzy discontinued his pain and diabetes medications in retaliation for filing this Complaint. ECF No. 17 at 1. The Court may not address this new claim because an opposition to a dispositive motion is not a vehicle for amending a pleading. *See Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-CV-3193, 2015 WL 2227928, at *7 (D. Md. May 11, 2015). If Mr. Grant wants to pursue this claim, he may file a separate complaint.

Amendment claim for damages.   The Amended Complaint is dismissed against Defendant YesCare and judgment is entered in favor of Defendant Buzy.

A separate Order follows.


_11.4.2024_____                          _/S/_____
Date                                          Julie R. Rubin
                                              United States District Judge

17